2006 ME 3

**Lara M. BONVILLE**

v.

**Jere BONVILLE.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Dec. 13, 2005.
Decided: Jan. 17, 2006.

Jennifer E. Thomas, Beagle & Ridge, L.L.C., Portland, for plaintiff.

Craig J. Rancourt, Biddeford, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CALKINS, J.

[¶ 1] Lara M. Bonville appeals from a judgment entered in the District Court (Biddeford, *Janelle, J.*) granting a divorce to herself and Jere Bonville and allocating marital property and debt. Lara contends that the court erred by (1) adopting Jere's proposed judgment; (2) failing to address several debts, an IRA account, and the child support arrearage; (3) finding that certain items were Jere's nonmarital property; (4) ordering the sale of the marital home; and (5) allocating marital debt. Because the parties agree that the court did not accept their written stipulation as to one of the debts without notifying them and giving them the opportunity to present further evidence on the issue, we vacate and remand the judgment for the court to further consider the allocation of debt, and if need be, the division of property. On all other issues, we affirm.

## I. BACKGROUND

[¶ 2] Lara and Jere were married in 1992, and they have one child, age twelve. The parties first separated in 1998, but reconciled later that same year. The parties separated again in 2002, and Lara filed a divorce complaint. In an interim order, the court (*Stavros, M.*) granted primary residence of the child and temporary possession of the marital home to Lara. Jere was ordered to pay Lara child support. In 2004, the parties reached an agreement regarding parental rights, and they stipulated to a partial divorce judgment, which

was entered by the court in early 2005.[1]

[¶ 3] Subsequently, a hearing was held on the financial and property issues. In a joint pretrial memorandum filed with the court, the parties stipulated that two liens on the marital residence were allocated exclusively to Jere and were to be paid with Jere's share of the equity in the marital residence. The first lien was for a child support debt Jere owed to the Department of Health and Human Services in the approximate amount of $17,000. The second was a $4150.75 attorney lien.

[¶ 4] The parties also agreed in their joint pretrial memorandum on the issues to be presented to the court. In addition to the value and allocation of the marital residence, they listed numerous debts that they were asking the court to allocate. They also listed five vehicles, one motor home, and numerous other accounts and items of personalty for the court to value and distribute.

[¶ 5] At the hearing, both parties testified and presented proposals regarding the division of the marital property and debt. At the end of the hearing, the court requested each party to submit a proposed judgment. The court adopted Jere's proposed judgment in all respects except that it adopted Lara's proposed provision on spousal support.[2]

[¶ 6] The court found that the parties owned a marital residence encumbered by a mortgage of $57,923.69 and various liens, which the court listed with the amounts and which total $37,021.56. In Paragraph 10 of the judgment, the court listed the numerous unpaid debts of the parties and the amounts owed on each debt. With regard to the unpaid debts, the court stated that Jere was solely responsible for the debt to DHHS and Lara was solely responsible for a real estate tax lien of $1155.39. As to all remaining unpaid debts listed in Paragraph 10, the court ordered that they "are joint debts and shall be paid equally by the parties." Included in the list of unpaid debts in Paragraph 10 is the $4150.75 attorney lien. In another paragraph, the court listed various debts that the parties had paid, naming the party who had paid the debt. With regard to the debts that had been paid, the judgment states: "Each party shall receive credit for his or her payments in the settling of this marital estate."

[¶ 7] The court ordered the martial residence to be sold at fair market value, giving Lara the right to match any bonafide offer. The judgment provides: "Each party will be allocated fifty-percent (50%) of the equity in the house and the equity shall be utilized to pay the mortgage and liens . . . ."

[¶ 8] Lara did not request findings or reconsideration of the judgment in spite of the fact that several of her contentions on appeal concern the failure of the court to

1. It is not entirely apparent from the record why this divorce was handled in a piecemeal fashion, that is, with the issuance of a partial judgment on the parental rights issues, while the property issues and the divorce itself were decided in a separate judgment. We have previously expressed our dissatisfaction with the piecemeal approach to divorce judgments. *Hebert v. Hebert*, 475 A.2d 422, 424 n. 3 (Me. 1984). When there are circumstances warranting piecemeal treatment, such as the need for more immediate stability for the children, it would be advisable for the record to indicate what they are.

2. Jere's proposed judgment provided that neither spouse pay support to the other, but the judgment issued by the court requires Jere to pay spousal support to Lara in the amount of $1 per year "for the sole purpose of giving Plaintiff redress should Defendant file for bankruptcy and be relieved of the obligation to pay his share of the above named debts." The judgment also states that Lara shall pay no spousal support to Jere.

address certain issues. She also contends that the court erred in adopting Jere's proposed judgment "virtually verbatim" and in finding certain property to be Jere's nonmarital property. She argues that the court abused its discretion when it ordered the sale of the marital residence. She further contends that the court ignored agreements that the parties had reached, and abused its discretion when it allocated responsibility for the debts.

## II. DISCUSSION

### A. Standards of Review

[¶ 9] When there is a claim that a court adopted verbatim one party's proposed findings or judgment, we seek to determine whether the court's "findings and order reflect the application of judgment by the court and not simply one of the parties." *Jarvis v. Jarvis*, 2003 ME 53, ¶ 15, 832 A.2d 775, 779 (citing *In re Marpheen C.*, 2002 ME 170, ¶ 7, 812 A.2d 972, 974). We review the division of marital property and debt for an abuse of discretion. *Kapler v. Kapler*, 2000 ME 131, ¶ 13, 755 A.2d 502, 507. The determination of whether property is marital or nonmarital is a question of fact that we review for clear error. *Murphy v. Murphy*, 2003 ME 17, ¶ 20, 816 A.2d 814, 820.

### B. Adoption of Jere's Proposed Judgment

[¶ 10] Lara argues that the court erred by adopting Jere's proposed judgment almost verbatim because it implies that the court did not review the evidence and apply its own judgment. We have said that "a trial court's verbatim adoption of finding or orders proposed by one party in a case is disfavored [because] such an approach suggests that the court has not carefully reviewed the evidence or applied its independent judgment in making its

findings and conclusions." *Jarvis*, 2003 ME 53, ¶ 14, 832 A.2d at 778.

[¶ 11] After scrutinizing the court's findings, *see id.* ¶ 15, 832 A.2d at 779, we conclude that the court properly performed its judicial function. The fact that the court did not accept Jere's proposed spousal support language demonstrates that it not only carefully reviewed the proposal but compared it with Lara's proposed judgment. Given that the parties presented the court with numerous exhibits and had a multitude of factual findings they wanted the court to determine, the court was warranted in requesting and utilizing the parties' proposed findings and judgments.

### C. Court's Failure to Address Certain Items

[¶ 12] Lara contends that the court erred by failing to address certain debts and an IRA account. She contends that she testified about the items, but the court did not mention them in the judgment. Specifically, she testified about a(1) $100 debt owed for the child's Cub Care insurance; (2) $1300 debt that she owed for a credit union loan; (3) $2000 debt owed to her parents for money they had loaned her; and (4) Paine Webber IRA account. With the exception of the Cub Care debt, the items were listed in the parties' joint pretrial memorandum as issues for trial.

[¶ 13] When a party contends that a court ignored or omitted property or debt in a divorce judgment, there is little sense in making that contention to the appellate court in the first instance. Generally speaking, if the appellate court agrees that the trial court failed to allocate certain items, all it can do is remand the matter to the trial court to consider the issue. The party would have saved time and money by bringing the alleged failure to the trial court first in the form of a

motion. Motions to reconsider are expressly for the purpose of bringing an error or omission to the attention of the trial court. M.R. Civ. P. 7(b)(5). A motion for further findings, pursuant to M.R. Civ. P. 52(b), may also suffice to bring the court's attention to omissions in a judgment.

[¶ 14] We cannot say that the trial court erred by not including the above-listed items in the judgment. By the evidence she produced, Lara may have failed to persuade the court that the items existed. Indeed, there was evidence that the Paine Webber IRA account no longer existed and had been expended in its entirety for another debt.[3] The court could have considered both the credit union loan and the loan from her parents to be solely Lara's debts because they were made only to her, and implicitly, the debts remained Lara's responsibility.

[¶ 15] With regard to the debts and assets that were listed in the parties' pretrial memorandum as trial issues, it may have been preferable for the court to have stated either that it did not find that they still existed or to make other specific findings as to why they were not included in the judgment. Nonetheless, when parties submit a voluminous number of debts and items of personalty, coupled with confusing testimony and testimony about items not included on the lists presented to the court as exhibits, a trial court cannot be faulted for failing to set forth each and every item of personalty and debt mentioned by the witnesses, particularly when the omission is not called to the court's attention. Without a motion for reconsideration, motion for further findings, or otherwise calling alleged errors or omissions to the attention of the court, we assume that the court made all findings necessary for its determination. *See Allen v. Allen,* 603 A.2d 482, 483 (Me.1992). The trial court did not err in failing to allocate or otherwise make findings about the four items now complained of by Lara.

### D. Court's Failure to Address the Child Support Arrearage

[¶ 16] Lara testified that Jere owed her $449.82 for seven weeks of unpaid child support, and no contrary evidence was presented on the issue. Child support arrearages were not included in the list of trial issues in the parties' joint pretrial memorandum. As with the items of debt that were not included in the judgment, Lara should have asked the court, through a post-judgment motion, to address the child support arrearages or make findings regarding the arrearages.

[¶ 17] Nothing in our case law, statutes, or rules has been called to our attention that requires a court to include in a final divorce judgment a provision for child support arrearages accruing under an interim order. Although it is appropriate to include an order enforcing an arrearages debt in a final judgment, an arrearages debt is not extinguished when it is not included in the final judgment. *See Button v. Button,* 222 A.2d 245, 247 (Me. 1966). The court did not abuse its discretion when it failed to make a finding or provision regarding the arrearages.

### E. Findings of Nonmarital Property

[¶ 18] Lara claims that the court erred when it found that the 1988 Ford van, motorcycle, and tools were Jere's nonmarital property and when it set aside those items to him. The evidence on these

---

**3.** Lara concedes that the IRA account is "not technically an asset," but she argues that its existence during the marriage should have been considered by the trial court in distributing other assets and debt.

items was disputed, although Lara conceded that half of the tools were Jere's nonmarital property. The court did not clearly err in finding that the van, motorcycle, and tools were Jere's nonmarital property.

## F. Sale of Marital Residence

[¶ 19] Lara proposed to the trial court that she be given 120 days to obtain refinancing for the marital residence. She offered evidence that the value of the house was $145,000 and testified that she had been preapproved for refinancing for up to $112,000. Jere presented evidence that the value of the residence was $155,000. The court ordered that the house be sold, but it gave Lara the right "to match any bonafide offer."

[¶ 20] Lara contends that the court abused its discretion when it ordered the sale of the house because it did not take into consideration her desire to remain in the home with the minor child, nor did it consider the overall economic impact of the sale. As stated above, Lara did not request further findings, and we assume that the court made all findings necessary for its determination. Furthermore, in light of the large amount of debt of the parties, it is obvious that the court did take the overall economics of the situation into consideration. The court did not abuse its discretion when it ordered the sale.

## G. Allocation of Marital Debts

[¶ 21] Lara's primary complaint about the allocation of the marital debts is that the court ignored the parties' testimony that they would be responsible for particular debts and ignored their stipulation regarding the attorney lien. With the exception of the written stipulation concerning the attorney lien, the other debts discussed by Lara in her brief on appeal were either the subject of confusing or conflicting testimony, or there was a brief acknowledgment in testimony that a debt was "marital," "personal," or the party was willing to accept half of the debt but believed the other party should pay the other half.

[¶ 22] A large part of the dispute about the debts centers on the fact that the parties did not live together for several months in 1998 and 2002, and their respective beliefs as to who was responsible for debts incurred during those periods of separation. In light of the disputed and confusing testimony, we cannot say that the court abused its discretion regarding the allocation of marital debt with the exception of the attorney lien.

[¶ 23] Regarding the attorney lien, we must remand the matter to the trial court to consider the written stipulation of the parties that the debt is exclusively allocated to Jere. The court is not required to accept the agreement of the parties, but before it rejects it, "the court must give the parties notice of its intention and an opportunity to present additional evidence on the issue or issues." *Shaw v. Shaw*, 2003 ME 153, ¶ 12, 839 A.2d 714, 717. The court's failure to accept the parties' written stipulation, without giving them the opportunity to be heard further, requires us to remand the matter. Although we would otherwise affirm the judgment, because the allocation of one debt can upset the fine balance of the allocation of all property and debts, we vacate the portions of the judgment that allocate marital property and debts. On remand, the court may accept the stipulation, in which case it may or may not invite the parties to be heard regarding a modification of the judgment. Alternatively, if the court intends to reject the stipulation it should allow the parties to present additional evidence on it.

The entry is:

Judgment vacated as to the division of marital property and debt and remanded to the trial court for further proceedings consistent with this opinion. In all other respects the judgment is affirmed.